**UNITED STATES of America, Plaintiff,**

v.

**Gregory A. SCHMALZ, Gerald W. Schmalz, Marie A. Schmalz, and Menasha Electric and Water Utilities, a Wisconsin municipal utility, also known as Menasha Electric and Water Utilities, Inc., Defendants.**

and

**MENASHA ELECTRIC AND WATER UTILITIES, Third–Party Plaintiff,**

v.

**Warren E. WIESELER, Wieseler Construction, Inc., Menasha Corporation, and Consolidated Papers, Inc., Third–Party Defendants.**

Civ. A. No. 90–C–941.

United States District Court,
E.D. Wisconsin.

June 8, 1993.

Steven D. Ellis, Environmental Enforcement Section, ENR Div., U.S. Dept. of Justice, Washington, DC, Nathan Fishbach, U.S. Atty., Milwaukee, WI, John Breslin, Asst. Regional Counsel, Chicago, IL, for plaintiff.

Walter Kuhlmann, Richard Delancenserie, Laurie J. Kobza, Boardman, Suhr, Curry & Field, Madison, WI, for defendant and third party plaintiff, Menasha Elect.

Raymond Pollen, Douglas H. Starck, Riordan Crivello Carlson Mentkowski Steeves, Milwaukee, WI, for third party defendant, Menasha Corp.

Gerald W. Schmalz, Marie A. Schmalz and Gregory Schmalz, pro se defendants.

Ted Waskowski, Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, for third party defendants, Warren Wieseler and Wieseler Co.

Robert DuPuy, Mark D. Kunkel, Foley & Lardner, Milwaukee, WI, for third party defendant, Consolidated Papers.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

On November 7, 1990, plaintiff United States of America filed an amended complaint seeking recovery of environmental response costs associated with a dump site located in Harrison, Wisconsin, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, Title 42 United States Code §§ 9601 *et seq.* ("CERCLA"). On March 27, 1992, Menasha

Electric and Water Utilities ("the Utilities")[1] filed a third-party complaint for indemnification and/or contribution from third-party defendants.

Presently before the court are third-party defendant Menasha Corporation's ("Menasha") December 21, 1992 motion for partial summary judgment and the Utilities' January 22, 1993 motion for summary judgment. For the reasons discussed below, this court denies both motions.

## BACKGROUND

In September 1984, the Schmalz dump site was listed on the National Priorities List as a Superfund site. The Environmental Protection Agency ("EPA") investigated the site. The EPA initially conducted the Phase I Remedial Investigation, initiated in April 1985, "to determine the areal extent of PCB [polychlorinated biphenyl] contamination and the presence and magnitude of other chemical contaminants on site that may pose a threat to human health and the environment." (Apr. 27, 1987 Executive Summary of Remedial Investigation Report at 1 (attached to June 13, 1991 Kobza Aff. as Ex. 1).) Sampling indicated the presence of PCBs, lead and chromium.

The supplemental Phase II Remedial Investigation additionally covered area north and west of the dump site, "to examine groundwater contamination by lead and chromium, to predict pathways of contaminant migration, and to locate the source or sources of these contaminants." (Aug. 12, 1987 Executive Summary of Remedial Investigation Report at 1 (attached to Kobza Aff. as Ex. 3).) The site is illustrated below:

The Record of Decision, dated September 30, 1987, selected a soil cap and groundwater monitoring as a remedy for the dump site.[2]

## ANALYSIS

The court must grant a motion for summary judgment if the pleadings, depositions,

---

1. The Utilities are owned and operated by the City of Menasha, a Wisconsin municipal corporation.

2. A copy of the decision is attached to the Kobza Aff. as Ex. 7.

answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

### I. Menasha's Motion for Partial Summary Judgment

Menasha argues that this court should dismiss all claims against it based upon the Phase I Remedial Investigation because its waste was not disposed of on land investigated during Phase I; i.e., land south of the access road which is located within the boundaries of the Schmalz dump site, as illustrated above. Menasha also contends that its waste did not contain PCBs.

#### A. *Location of Dumping*

Francis Eparvier was employed by Menasha and its predecessor, John Strange Paper Company (which Menasha acquired in 1971), for over twenty-six years before he retired in 1976. (Sept. 22, 1987 Eparvier Dep. at 4–5.) Eparvier was the primary waste hauler from approximately 1969 to 1973. (*Id.* at 5–6.) Eparvier took Menasha's waste to Gresen's dumping grounds, which is located north of the access road. (*Id.* at 9.) Eparvier generally only dumped on the north side of the access road; he also created the access road by dumping. (*Id.* at 11–12.) Robert Jochman, a relief driver for Eparvier, dumped in the same locations that Eparvier did. (Nov. 21, 1991 Jochman Dep. at 12–17, 21–24.)

Jochman, however, has no recollection of where he dumped. (*Id.*)

During the last two or three years that Eparvier was employed, however, Donald Bunkert[3] also hauled waste for Menasha. (Eparvier Dep. at 9.) There apparently was another hauler, Gordon Hildebrand, as well.[4] (Jochman Dep. at 18.) Additionally, Gregory Schmalz, who lived on the Schmalz premises, attests that between approximately 1960 and 1981, he saw many John Strange Paper Company trucks dump fly ash on the Schmalz property. (Jan. 18, 1993 Gregory Schmalz Aff. ¶¶ 2–5.) Finally, some of Menasha's waste may have migrated to the Schmalz property. (Jan. 14, 1993 Rover Aff. ¶ 5.)

■ CERCLA imposes joint and several liability unless a defendant can prove that the environmental harm is divisible. *See e.g., United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1507 (6th Cir.1989). There is a question of material fact as to whether Menasha's waste reached the dump site either by direct dumping or by migration. At this stage of the proceedings, Menasha has not carried the burden of proving that it may not be held liable for response costs of Phase I, in light of the affidavits submitted by the Utilities.

#### B. *Hazardous Substance or Not*

■ Menasha asserts that its waste consisted only of fly ash and paper waste, and therefore was not a "hazardous substance." In support of its assertion, Menasha cites Eparvier's testimony that he only hauled fly ash and general paper mill waste. (Eparvier Dep. at 6–7.) Menasha presents no expert testimony on this asserted fact. The Utilities' expert counters that Menasha's fly ash contained hazardous substances including PCBs. (Jan. 14, 1993 Rover Aff. ¶ 4.) Menasha has not shown that its waste was not hazardous, and therefore is not entitled to summary judgment on this point.

---

3. Jochman testified that there was a hauler named "Donny Bangert." (Jochman Dep. at 19.)

4. No party pointed out to the court that these two people, Bunkert (or Bangert) and Hilde-

brand, were haulers. This court discovered this fact in reviewing the deposition transcripts submitted by Menasha.

## II. The Utilities' Motion for Summary Judgment

■ The Utilities' contribution claim against Menasha is brought pursuant to § 113(f) of CERCLA [42 U.S.C. § 9613(f)], which provides:

[a]ny person may seek contribution from any other person who is liable or potentially liable under section 107(a) [42 USCS § 9607(a)], during or following any civil action under section 106 [42 USCS § 9606] or under section 107(a) [42 USCS § 9607(a)].... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

To establish whether Menasha is liable under § 107(a), four elements must be established:

(1) the site in question is a "facility" as defined by CERCLA; (2) the Defendant is a "responsible person" for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs.

*Envtl. Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir.1992) (citations omitted). If the Utilities establish all four elements of liability, and Menasha does not have a defense listed in § 107(b) [42 U.S.C. § 9607(b)], the Utilities are entitled to summary judgment that Menasha is liable for contribution under CERCLA. *Id.* at 506–509. The Utilities ask this court to so find.[5]

Apparently no one disputes that the dump site is a "facility." The Utilities argue that Menasha is a "responsible party" because it is a "person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person." § 107(a)(3) [(42 U.S.C. § 9607(a)(3)].

The Utilities argue that the only dispute is whether Menasha's waste was hazardous. The definition of hazardous substance is set forth in § 101(14) [42 U.S.C. § 9601(14)]. Menasha's waste, as discussed above (the Rover affidavit), may have contained hazardous substances. Indeed, Menasha has not set forth any competent evidence to show that there is a genuine issue of fact with respect to the Utilities' claim that Menasha's waste was a hazardous substance. *See* Fed. R.Civ.P. 56(e); Local Rule 6.05(b)–(d) (E.D.Wis.).

The Utilities state that they have "established each of the four elements of § 107(a) liability. Menasha Corporation's only disputed issue related to the elements of liability was whether its waste was hazardous. Undisputed facts, however, proved that Menasha Corporation's waste contained the hazardous substances, lead and chromium,...." (Jan. 22, 1993 Br. at 23.)

Menasha contends that the Utilities have not shown a "release or threat of release." This court assumes that because contamination was found at the site and the site was put on the National Priority List, there was a release or threat of a release. However, the Utilities did not file a reply brief in support of their motion, and therefore this element is never addressed. Because the Utilities, in support of their motion, have failed to supply this court with specific facts which have citations to the record, this court must deny the Utilities' motion.

**IT IS THEREFORE ORDERED** that third-party defendant Menasha Corporation's December 21, 1992 motion for partial summary judgment is DENIED.

---

5. This court reminds the parties of their obligation to file a formal motion when they are requesting the court to do something. In this case, the Utilities did not file a motion for summary judgment. Additionally, the Utilities captioned their January 22, 1993 brief as a brief in opposition to Menasha's motion, rather than also indicating that it was a brief in support of a motion for summary judgment. While it was clear from reading the Utilities' brief that they were seeking summary judgment, the Utilities must give formal notice to all parties and the court that they are so moving. Because there was no "motion," the docket did not reflect that the Utilities had made a motion. This court therefore had to contact the clerk's office to enter the Utilities' motion on the docket. Parties should consult Local Rule 6 regarding motion practice.

**IT IS FURTHER ORDERED** that Menasha Electric and Water Utilities' January 22, 1993 motion for summary judgment is DENIED.